## Richmond

THEODORE ROOSEVELT GIBSON, JR. v. COMMONWEALTH OF VIRGINIA.

December 1, 1975.

Record No. 750071.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Overton P. Pollard* (*Moore & Pollard,* on brief), for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The defendant, Theodore Roosevelt Gibson, Jr., was indicted for the murders of his wife, Marian J. Gibson, and of his father-in-law, Maryland Elmore Coley. Tried by a jury upon his pleas of not guilty, the defendant was convicted of murder of the first degree for the death of his wife, with punishment fixed at life imprisonment, and of murder of the second degree for the death of his father-in-law, with punishment fixed at twenty years imprisonment. The trial court approved the convictions and imposed the sentences fixed by the jury.

At trial, the defendant challenged the sufficiency of the evidence, asserted a defense of insanity, and objected to several rulings of the trial court. On appeal, the questions involve: the admissibility of incriminating statements made by the defendant to his examining psychiatrist; the propriety of certain remarks made by the trial judge concerning the testimony of the psychiatrist; the admissibility of evidence of prior crimes; and the refusal of a defense instruction on insanity.

The record shows that on the night of April 10, 1974, the defendant shot and killed his wife and father-in-law. Warrants were issued charging the defendant with the crimes. On April 14, he was arrested. The following day, counsel was appointed to represent him. On April 17, upon motion of his counsel, the defendant was ordered examined by a Richmond psychiatrist. Two days later, the April 17 order was voided, and on April 22, the defendant was ordered committed to Central State Hospital to determine his mental competence "to plead and stand trial." On July 11, the hospital reported to the trial court that the defendant was "considered to be mentally competent and capable of standing trial."

During the defendant's trial in the court below, the Commonwealth called as a witness Dr. James C. Dimitris, who had examined the defendant at Central State Hospital. Over objection of defense counsel, Dr. Dimitris was permitted to testify that the defendant, in the course of interviews conducted to determine his mental condition, had admitted killing his wife and father-in-law.

Admission of this testimony is the basis of the defendant's first contention. He argues that admission of the testimony violated the physician-patient privilege and his constitutional right against self-incrimination.

There exists, however, no physician-patient privilege in a criminal prosecution in Virginia. The common law recognized no such privilege in either civil or criminal proceedings. McCormick, *Evidence* § 98 (2d ed. 1972). While Virginia has enacted a statutory privilege, it is expressly confined to civil proceedings. Code § 8-289.1. In the present case, therefore, admission of the doctor's testimony did not violate any physician-patient privilege.

Neither, in our opinion, did admission of the testimony violate the defendant's constitutional right against self-incrimination. While the authorities are divided upon the subject, we believe the appropriate rule is found in the nature of the constitutional right itself. It is *compulsory* self-incrimination against which constitutional protection is afforded. Proceeding from that predicate, it logically follows that, whether an accused consents or is required to submit to a psychiatric examination, if during the examination he is *not compelled* to answer questions concerning the offense with which he is charged, there is no violation of his right against self-incriminaton. *See People* v. *Ditson*, 57 Cal.2d 415, 438, 20 Cal. Rptr. 165, 184, 369 P.2d 714, 733 (1962); *Commonwealth* v. *Byrd*, 421 Pa. 513, 517, 219 A.2d 293, 294-95, *cert. denied*, 385 U.S. 886 (1966).

Here, nothing in the order of commitment or in the statute authorizing the commitment (Code § 19.1-228, now § 19.2-169) compelled the defendant to answer questions propounded by his examining psychiatrist concerning the crimes with which he was charged. Neither does the record disclose that during the psychiatric examination any compulsion was employed to elicit the statements which were later used against the defendant at trial. Indeed, the examining psychiatrist testified that although the defendant was told it "would be helpful" if he related the circumstances of the crimes, he was also informed he had "the absolute right to tell . . . or not to tell" his examiners

about the offenses. Notwithstanding this clear warning and despite the fact that he was represented by competent counsel throughout the commitment and examination period, the defendant freely recited the details of the offenses with which he was charged. His incriminating statements, therefore, were voluntary, and hence admissible. *See Jones* v. *Commonwealth*, 214 Va. 723, 204 S.E.2d 247 (1974).

The defendant next contends that the trial court erred in denying his motion for mistrial. This point arose when the defendant called Dr. Dimitris, the psychiatrist from Central State Hospital, to testify in support of the defense of insanity. In the presence of the jury, the trial judge inquired of defense counsel whether he was calling the doctor as an adverse witness. When counsel answered affirmatively, the judge stated that he saw no reason to allow the defense to treat the doctor as adverse because, in his previous testimony, the witness had not shown any "hostility toward one side or the other" or any "preconceived notions that would be . . . adverse." The judge further stated, however, that if the witness proved hostile, the defense could then treat him as adverse.

The judge's statements, the defendant argues, constituted comment upon the credibility of the witness, "gave the jury the impression of the court being biased" against the defense, and necessitated a declaration of mistrial. We disagree with the defendant. The statements were nothing more than the judge's explanation of a correct ruling that the defense, at that point in the trial, could not treat the witness as adverse.

The next question is whether the trial court erred in admitting evidence tending to show that the defendant had committed prior crimes. This question involves evidence showing that on February 22, 1974, some seven weeks before occurrence of the murders now under consideration, the defendant had shot and wounded his wife and daughter.

The general rule is that evidence of other crimes committed at other times is inadmissible to prove guilt of the offense for which the accused is on trial. Exceptions to this general rule, however, are as well established as the rule itself:

"Evidence of other offenses is admitted if it shows the conduct and feeling of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where

the evidence is connected with or leads up to the offense for which the accused is on trial." *Kirkpatrick* v. *Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).

The evidence here in dispute showed the conduct and feelings of the defendant toward his wife, established their prior relations, and proved events connected with and leading up to the murders for which the defendant was on trial. Furthermore, it would not be unfair to say that the defendant invited introduction of the disputed evidence and also made the most of the evidence in an attempt to buttress his insanity defense. Admission of the evidence, therefore, neither constituted error nor resulted in prejudice. *See O'Boyle* v. *Commonwealth*, 100 Va. 785, 792, 40 S.E. 121, 123-24 (1901).

The final contention of the defendant is that the court erred in refusing him an instruction on insanity. The question here is whether there was sufficient evidence to support such an instruction.

The evidence on this point shows that for several months prior to the murders on April 10, 1974, the defendant and his wife had experienced marital difficulties. As previously recited, on February 22, 1974, the defendant shot and wounded his wife and daughter. The parties then separated. Thereafter, the defendant was disturbed and upset. Approximately one month before the murders occurred, the defendant delivered to his mother a tape recording with instructions "to play it after he was dead." The tape contained what may be interpreted as a suicide message. A few days before the date of the murders, the defendant told his sister that he could not live without his family and that if "they couldn't live together . . . he just didn't want to live."

After the murders were committed on April 10, 1974, the defendant was confined in the Richmond City Jail. On April 15, a guard discovered the defendant unclothed in his cell, "talking to the sink" and "trying to find out where the microphone was." Later the same day, another guard observed the defendant "down on the floor" of his cell, bleeding from the left side of his face. The defendant had torn off his left ear, and he was immediately hospitalized at the Medical College of Virginia.

While in the Medical College Hospital, the defendant was examined on April 16 and 19 by Dr. John Mullaney, a staff psychiatrist. Testifying as a defense witness at trial, Dr. Mullaney stated that, on the

dates of his examination, he found the defendant paranoid and schizophrenic. The doctor further said:

"At that time [the defendant's] total ability to relate to reality was very disturbed. So, he really would not be able to satisfactorily understand or appreciate much of anything including questions of right and wrong."

When asked, however, if he had an opinion as to how long the defendant "had been in this state," Dr. Mullaney replied, "No." And the doctor conceded that the fact the defendant had shot and killed his wife and father-in-law would have had "a very definite impact" upon his mental status.

Dr. Dimitris, who had examined the defendant at Central State Hospital, testified that, although he believed the defendant had "experienced an acute mental breakdown" in jail following the murders, he was of opinion that the defendant's mental condition was a result, rather than the cause, of the murder episode. When asked whether the defendant was "competent" at the time of the murders, the doctor replied that "the defendant was aware of the natural quality and the consequences of his acts."

Conceding that "there was no positive, concrete psychiatric testimony that [he] was out of touch with reality and mentally incompetent when the crimes were committed," the defendant argues that he was "nevertheless" entitled to an instruction on insanity. The evidence of his disturbed state of mind preceding the murders and of his mental breakdown thereafter, the defendant asserts, entitled him to have the jury consider the question of his insanity.

We disagree with the defendant. Instructions on insanity, as other instructions, must be supported by more than a mere scintilla of evidence. Upon a plea of insanity in a criminal case, the issue is whether the accused was insane *at the time the offense was committed*. Where, as here, the only evidence directly relating to that crucial time shows that the accused was aware of the nature and quality of his acts, it is not error to refuse an instruction on insanity.

The defendant relies upon *Thompson v. Commonwealth*, 193 Va. 704, 70 S.E.2d 284 (1952), but the case does not support his position. There, the issue on appeal was whether the trial court had erred in refusing a defense instruction on irresistible impulse. We held that

there was no evidence justifying the instruction. *Thompson*, therefore, is merely another situation where, as here, the evidence did not support a tendered instruction.

Finding no error in the convictions of the defendant, we affirm the judgments of the trial court.

*Affirmed.*