COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Annunziata and Overton
Argued at Richmond, Virginia


JERVON LAMANT HERBIN, S/K/A
 JERVON LAMONT HERBIN
                                        OPINION BY
v.    Record No. 1553-97-4       JUDGE ROSEMARIE ANNUNZIATA
                                      AUGUST 18, 1998
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                   Thomas D. Horne, Judge

          Paul A. Maslakowski, Assistant Public
          Defender, for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     The appellant, Jervon Lamont Herbin, appeals his convictions

for attempted rape (Code § 18.2-67.5), malicious wounding (Code

§ 18.2-51), abduction (Code § 18.2-47), and two counts of

forcible sodomy (Code § 18.2-67.1).  Appellant contends the trial

court erred by refusing to give his proffered jury instructions

on insanity.  He further asserts the trial court erred in not

admitting into evidence letters from the victim's mother.

Finding no error, we affirm.

     Appellant was a temporary houseguest at the Ashburn,

Virginia home of his school acquaintance, Maria Wheeler (Maria).

 Due to a gunshot wound suffered eight days prior to the

offenses, appellant was injured and using crutches.  On the

morning of January 27, 1996, only appellant and the victim,

Maria's daughter, Valerie Wheeler (Valerie), were present in the

home.  Appellant requested Valerie's help putting on his socks and, after returning to her room to finish a phone call, Valerie entered appellant's room.

After assisting appellant with his socks, Valerie asked if she could help him with anything else.  Appellant pulled out a kitchen knife and stated, "Don't make this difficult for me."  He instructed Valerie to remove her shirt.  In response to Valerie's pleas for appellant to stop his attack, appellant stated his intention to have sexual intercourse with her.  He again demanded that Valerie take off her shirt, and she yielded to his demand. As appellant turned away from Valerie for a moment, she attempted to knock him over.  Her attempt barely moved him, and appellant turned around and stabbed Valerie several times.  Following this exchange, Valerie ceased struggling.

At appellant's instruction, Valerie removed her pants and sat on the side of the bed.  Appellant put down the knife and, ignoring Valerie's protests, forced her to perform oral sex on him.  Soon after, Valerie was instructed to lie down on the bed, which she did.  In response to Valerie's protestations, appellant stated he had to commit the crime because she always told the truth and would tell her mother.  After appellant unsuccessfully attempted sexual intercourse with Valerie, he instructed Valerie to perform oral sex for a second time, which she did.  When he was unable to become erect, appellant pulled up his pants and paced around the room.

2

While pacing, appellant attempted to convince Valerie to touch the knife and asked her whether her family owned guns and whether the car had automatic or manual transmission. Valerie answered his questions and pleaded for appellant to call the hospital. In response to Valerie's request, appellant voiced his fear the police would arrest him if he called the hospital. Thinking aloud, appellant considered excuses he could present to the hospital; he stated that he could tell the hospital that Valerie was hurt in a kitchen accident or that she was injured while taking the knife from him as he attempted to commit suicide.

After threatening Valerie's life if she moved, appellant went into her bedroom to use the phone. Appellant pretended to call for emergency assistance twice. After pretending to call for assistance, appellant actually called for emergency services, and told the emergency operator that Valerie had been injured in a kitchen accident. When the paramedics arrived, the appellant told a paramedic that Valerie had slipped on a rug and accidentally stabbed herself. Appellant told a police officer that he was trying to commit suicide, and Valerie was accidentally stabbed trying to take the knife away. After Valerie informed the paramedic of the incident, police arrested appellant.

At trial, appellant testified that he felt disturbed and out of control on the morning of January 27. More specifically, he

3

testified that he had the feeling that "nothing is wrong or right." Appellant further testified that he had no recollection of the incident or the emergency call, that he did not remember anything before noticing Valerie sitting in a pool of blood, and that he regained his awareness sometime between the emergency call and the arrival of the ambulance.

Appellant's testimony was contradicted by a number of witnesses who testified as to the voice and demeanor of appellant the day of the attack. Both Maria and Michael Wheeler (Michael) said his behavior was normal before they left for work. Valerie testified that, during the attack, appellant's voice was even and conversational and that he did not appear nervous. The Emergency Medical Technician stated that appellant was quiet and cooperative; one police officer on the scene noted his docile nature. Another officer testified that appellant was not despondent and spoke in a normal tone while in custody. Additionally, the officer testified that appellant stated that he faced thirty years in prison for the offense and would probably serve twenty to twenty-six years of his sentence.

Appellant presented evidence of his distress during the period leading up to the attack. He broke up with his girlfriend, the mother of his child, which, he claimed, led to renewed drug abuse. Eight days before the incident, he was shot in the hip trying to re-enter his mother's home after using crack cocaine. He was taken to the hospital and treated. Upon leaving

4

the hospital, he temporarily moved in with the Wheelers. Shortly thereafter, appellant unsuccessfully attempted suicide by taking all of his Percocet painkillers. Appellant testified that he had a sexual relationship with Maria and cited immense distress derived from constant contact with Michael, who knew nothing of the relationship appellant claimed to have had with Maria.

Appellant introduced extensive evidence of his background of physical and sexual abuse, drug use, and suicide attempts. Appellant was institutionalized for most of the period from July 1976 to March 1978. From October 1993 until November 1994, appellant attended a sex offender treatment program at the Augustus Institute. Approximately three months before the attack, Hans Selvog, Assistant Clinical Director of the Augustus Institute, met with appellant and found him anxious, disjointed and exacerbated. A mental health evaluation, dated March 5, 1993, stated that appellant needed continued supervision and treatment and expressed concern for the appellant's short-term memory lapses. Selvog stated in a letter to appellant's attorney that appellant needed continued structure and supervision to treat his substance abuse and sexual disorders.

Maria testified that her relationship with appellant continued after the attack. She visited him, wrote letters to him, and sent him money. When asked about the extent of her relationship with appellant, she denied that any "physical relationship" occurred. Appellant attempted to introduce into

evidence letters Maria wrote to him while appellant was incarcerated. Appellant argued that Maria's letters were necessary to impeach Maria's denial of an affair and to corroborate his testimony. After reviewing the letters, the trial court ruled the letters inadmissible on the basis that they constituted impeachment of Maria on a collateral matter.

At the conclusion of the evidence, appellant proffered four jury instructions related to his insanity defense. Instruction A described the possible verdicts of the case as not guilty, not guilty by reason of insanity, and guilty. Instruction B would have instructed the jury to find appellant not guilty by reason of insanity if it found him insane and defined "insane" as "not understand[ing] the nature, character, and consequences of his act," or "unable to distinguish between right and wrong." Instruction C stated that if the jury found appellant able to understand the nature of his act and to perceive that it was wrong, it should nonetheless find him not guilty if the jury found that appellant was motivated by an irresistible impulse stemming from a mental disease. Instruction D explained that, if the jury found appellant insane, he would be confined in a state hospital until the court ordered him released. At the instruction conference, the Commonwealth argued that the court should not give any instructions on insanity because there was no evidence that appellant had a diseased mind. The trial court agreed and refused the instructions on the ground that the

6

evidence did not support the insanity defense.

## I. Jury Instructions

Appellant first contends the trial court erred in refusing his proffered instructions on insanity. "If there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction." Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990) (citing Painter v. Commonwealth, 210 Va. 360, 365, 171 S.E.2d 166, 168 (1969)). "If a proffered instruction finds any support in the credible evidence, its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975) (citing Taylor v. Commonwealth, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947)).

"Instructions on insanity, as other instructions, must be supported by more than a mere scintilla of evidence." Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975). In determining whether evidence amounts to more than a scintilla, "we must look at the evidence in the light most favorable to [appellant]." Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991).

"[T]he actual M'Naghten test for insanity, stated in the disjunctive, is the rule in Virginia." Price v. Commonwealth, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984). Under the M'Naghten rule,

> "it must be clearly proven that, at the time
> of the committing of the act, the party
> accused was labouring [sic] under such a

7

> defect of reason, from <u>disease of the mind</u>,
> as not to know the nature and quality of the
> act he was doing; or, if he did know it, that
> he did not know he was doing what was wrong."

<u>Price</u>, 228 Va. at 457-58, 323 S.E.2d at 109 (quoting <u>M'Naghten's</u> <u>Case</u>, 10 Cl. & F. 200, 8 Eng. Rep. 718, 722-23 (1843)) (emphasis added); <u>see also</u> <u>Thompson v. Commonwealth</u>, 193 Va. 704, 716, 70 S.E.2d 284, 291 (1952). The two facets of the <u>M'Naghten</u> test are the "nature-of-the-act test and right-wrong test," and both facets require a showing of a disease of the mind. <u>Johnson v.</u> <u>Insurance Co. of North America</u>, 232 Va. 340, 347, 350 S.E.2d 616, 620 (1986). In <u>Price</u>, the Supreme Court of Virginia explained the application of both facets of the test:

> "The first portion of M'Naghten relates to an
> accused who is psychotic to an extreme
> degree. It assumes an accused who, because
> of mental disease, did not know the nature
> and quality of his act; he simply did not
> know what he was doing. For example, in
> crushing the skull of a human being with an
> iron bar, he believed that he was smashing a
> glass jar. The latter portion of M'Naghten
> relates to an accused who knew the nature and
> quality of his act. He knew what he was
> doing; he knew that he was crushing the skull
> of a human being with an iron bar. However,
> because of mental disease, he did not know
> that what he was doing was wrong. He
> believed, for example, that he was carrying
> out a command from God."

<u>Price</u>, 228 Va. at 459-60, 323 S.E.2d at 110 (quoting C. Torcia, <u>Wharton's Criminal Law</u> § 100, at 9 (14th ed. 1979)). In <u>Breard</u> <u>v. Commonwealth</u>, 248 Va. 68, 84, 445 S.E.2d 670, 679 (1994), the Supreme Court of Virginia held that the phrase "because of mental disease" is properly included in an insanity jury instruction.

8

In Virginia, the irresistible impulse defense is available "where the accused's mind has become 'so impaired by disease that he is totally deprived of the mental power to control or restrain his act.'" Godley v. Commonwealth, 2 Va. App. 249, 251, 343 S.E.2d 368, 370 (1986) (quoting Thompson, 193 Va. at 716, 70 S.E.2d at 292). Irresistible impulse "'is to be distinguishable from mere passion or overwhelming emotion not growing out of, and connected with, a disease of the mind.'" Thompson, 193 Va. at 717, 70 S.E.2d at 291-92 (quoting 14 Am. Jur. Criminal Law § 35, at 793); see also Breard, 248 Va. at 83, 445 S.E.2d at 679 (citing Thompson, 193 Va. at 717, 70 S.E.2d at 291-92) (holding that the diseased mind requirement is properly included in an "irresistible impulse" jury instruction). In order to prove irresistible impulse, a defendant must show that although understanding his or her actions, the defendant was unable, due to a disease of the mind, to control or restrain these actions. See Thompson, 193 Va. at 718, 70 S.E.2d at 292.

Because both the irresistible impulse test and the M'Naghten test require a showing of a disease of the mind, a defendant must present more than a scintilla of evidence of a mental disease in order to receive a jury instruction. See Gibson, 216 Va. at 417, 219 S.E.2d at 849. Although lay testimony may support a plea of insanity, "it is generally recognized that it is advisable to adduce expert testimony to better resolve such a complex problem." Shifflett v. Commonwealth, 221 Va. 760, 769, 274

S.E.2d 305, 311 (1981) (citing Alexander v. United States, 380 F.2d 33, 39 (8th Cir. 1967)).  Two doctors examined appellant after the attack was committed, but appellant did not introduce testimony or reports from the doctors.  Appellant presented the testimony of Selvog, but Selvog did not testify that appellant suffered from a disease of the mind.  Selvog acknowledged treating appellant, but only testified that he found appellant "disjointed" and that appellant raced from one topic to another during their conversation.  The record contains no expert testimony from which the jury could infer that appellant suffered from a mental disease.

While lay witnesses may testify to the attitude and demeanor of the defendant, "[l]ay witnesses cannot express an opinion as to the existence of a particular mental disease or condition." Mullis v. Commonwealth, 3 Va. App. 564, 573, 351 S.E.2d 919, 925 (1987) (citing Phillips v. Stewart, 207 Va. 214, 220, 148 S.E.2d 784, 789 (1966)).  The testimony pertaining to the attitude and demeanor of appellant on the day of the attack contains no evidence appellant was laboring under a diseased mind.  Appellant testified that he felt "out-of-control" and as if "nothing is wrong or right" on the morning of the attack, but he did not attribute those feelings to a mental disease.

Appellant abused illegal drugs as recently as eight days before the attack.  Additionally, one day before the attack, Maria provided him with her prescription drug, Halcion.  It is

10

well settled in Virginia that, "except in cases of first degree and capital murder, where proof of voluntary intoxication may negate deliberation and premeditation, such intoxication, whether from drugs or alcohol, is no defense to a criminal charge." Griggs v. Commonwealth, 220 Va. 46, 52, 255 S.E.2d 475, 479 (1979) (citation omitted) (citing, inter alia, Chittum v. Commonwealth, 211 Va. 12, 18, 174 S.E.2d 779, 782-83 (1970)). Virginia, however, follows the common-law rule that "settled insanity" produced by intoxication does provide a defense to crime. See, e.g., Arey v. Peyton, 209 Va. 370, 375, 164 S.E.2d 691, 695 (1968) (citing cases); Johnson v. Commonwealth, 135 Va. 524, 529, 115 S.E. 673, 675 (1923); Downing v. Commonwealth, 26 Va. App. 717, 722, 496 S.E.2d 164, 166 (1998). "The doctrine of 'settled insanity' draws a distinction between voluntary intoxication, universally recognized as not constituting a defense, and 'insanity' arising from long-term use of intoxicants but separate from immediate intoxication." Bieber v. People, 856 P.2d 811, 815 (Colo. 1993) (en banc).

"The weight of authority in this country recognizes an insanity defense that is based on a mental disease or defect produced by long-term substance abuse." Commonwealth v. Herd, 604 N.E.2d 1294, 1299 (Mass. 1992). At the same time, "evidence of mere narcotics addiction, standing alone and without other physiological or psychological involvement, raises no issue of such a mental defect or disease as can serve as a basis for the

11

insanity defense." <u>United States v. Lyons</u>, 731 F.2d 243, 245 (5th Cir. 1984) (citing cases). Although appellant produced evidence of long-term and severe drug abuse, he did not present any evidence that he was suffering from any mental disease as a result of this drug abuse. <u>See</u> <u>Hooks v. State</u>, 534 So. 2d 329, 353 (Ala. Crim. App. 1987), <u>aff'd sub nom.</u> <u>Ex parte Hooks</u>, 534 So. 2d 371 (Ala. 1988).

Finally, appellant introduced evidence that he was institutionalized on two occasions and treated for drug and sexual issues. Appellant presented evidence of specific stressors he experienced during the time leading up to the offense, including drug use, a gunshot wound, and a suicide attempt. Appellant did not present evidence, however, identifying these events and experiences as either causes or symptoms of a mental disease.

In short, appellant did not present direct evidence of mental disease, and the jury could not reasonably infer the existence of a mental disease from appellant's drug abuse, institutionalization, or stressful experiences. The record does not contain evidence of disease of the mind; accordingly, the court properly refused appellant's proffered jury instructions on insanity.[1]

---

[1]Even if appellant had been entitled to jury instructions on insanity, instruction D should have been denied. Instruction D described the consequences of finding appellant not guilty by reason of insanity verdict. In <u>Spruill v. Commonwealth</u>, 221 Va. 475, 486, 271 S.E.2d 419, 426 (1980), the Supreme Court of Virginia held that the trial court should not provide a jury

II.  Admissibility of Letters

Appellant also contends that the trial court erred in not admitting letters written by Maria to him into evidence.  It is well-recognized that "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988) (citing Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986)).

"Evidence is admissible if it tends to prove a matter that is properly at issue in the case and if its probative value outweighs policy considerations."  Blain, 7 Va. App. at 17, 371 S.E.2d at 842 (citing Levine v. City of Lynchburg, 156 Va. 1007, 1014, 159 S.E. 95, 97-98 (1931)); see also Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988).  "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant."  Cash, 5 Va. App. at 510, 364 S.E.2d at 771 (quoting McNeir v. Green-Hale Chinchilla Ranch, 194 Va. 623, 629, 74 S.E.2d 165, 169 (1953)).

Appellant and Maria presented conflicting testimony concerning the nature of their relationship.  Appellant argues that the letters sent to him in prison from Maria corroborated his testimony regarding the stress he was under and, therefore,

---

instruction addressing the consequences of the not guilty by reason of insanity verdict.

supported his affirmative defense of insanity.[2]

Assuming without deciding that the letters were relevant, their exclusion was harmless error.  A criminal conviction must be reversed for non-constitutional error unless "'it plainly appears from the record and the evidence given at the trial that'" the error did not affect the verdict.  Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678).  Alternately, non-constitutional error is harmless "'if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same.'"  Turner v. Commonwealth, 23 Va. App. 270, 275, 476 S.E.2d 504, 507 (1996) (quoting Davies v. Commonwealth, 15 Va. App. 350, 353, 423 S.E.2d 839, 840 (1992)), aff'd, 492 S.E.2d 447 (Va. 1997) (affirming order unpublished in Virginia Reports), cert. denied, 118 S. Ct. 1852 (1998).

If admissible, the letters had no bearing on the outcome of the trial.  While they speak to a relationship between appellant and Maria, the letters do not constitute evidence of a mental disease, and admission of the letters would not affect the trial court's decision to refuse appellant's proffered instruction on insanity.  Even assuming that the letters were relevant to appellant's insanity defense at the time appellant offered them,

_____

[2]Appellant does not argue on appeal that the letters were admissible to impeach Maria's testimony.

14

they would not have had a bearing on the verdict because the insanity defense was not properly before the jury.

For the reasons stated in this opinion, appellant's convictions are affirmed.

<u>Affirmed.</u>