COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Coleman and Lemons[*]
Argued at Richmond, Virginia


STEPHANIE LEIGH-ANNE CULL, S/K/A
 STEPHANIE LEIGH ANN CULL

                                    MEMORANDUM OPINION[**] BY
v.    Record No. 2202-98-2          JUDGE DONALD W. LEMONS
                                         MARCH 28, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                     Timothy J. Hauler, Judge

         David B. Hargett (Morrissey & Hershner, PLC,
         on brief), for appellant.

         Donald E. Jeffrey, III, Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellee.


     Stephanie Leigh-Anne Cull appeals her convictions for first

degree murder and abduction.  On appeal she maintains that the

trial court erred (1) by refusing her jury instruction on duress

and (2) by making a videotape, previously shown to the jury at

trial, available to the jury during deliberations.  Finding no

error, we affirm the convictions.

_____

        [*] Justice Lemons prepared and the Court adopted the opinion
in this case prior to his investiture as a Justice of the
Supreme Court of Virginia.

        [**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.  BACKGROUND

In her car, Cull drove Kelley Tibbs, Domica Winckler, Tracy Bitner, Dana Vaughn[1] and the victim, Stacy Hanna, to Marsh Field in Chesterfield County.  Motivated by "lies" that Hanna had allegedly told about Tibbs and Bitner, the codefendants[2] beat and kicked Hanna, cut her with box cutters and dropped a cinder block on her.  The box cutters were specifically obtained for purposes of the attack.

The women transported the severely injured Hanna in the trunk of Cull's car to a location on Nash Road in Chesterfield County where they continued to beat and stab her until she died.  The trial record and the briefs of the parties are replete with graphic details of the attack and the particular acts of the various participants.  To the extent that any of these details are necessary to the resolution of an issue on appeal, it will be considered in the following analysis of that issue.

## II.  INSTRUCTION ON DURESS

Cull argues that she was entitled to an instruction exonerating her from criminal liability if the jury found she acted under duress.

---

[1] Dana Vaughn was also in the car; however, she was not charged with any offenses.

[2] Although referred to as "codefendants" the women were tried separately.  As noted previously in Footnote 1, Dana Vaughn was not charged and, therefore, is not included in our use of the word "codefendants."

-

> "If there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction." Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990) (citing Painter v. Commonwealth, 210 Va. 360, 365, 171 S.E.2d 166, 168 (1969)). "If a proffered instruction finds any support in the credible evidence, its refusal is reversible error." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975) (citing Taylor v. Commonwealth, 186 Va. 587, 591, 43 S.E.2d 906, 908 (1947)).

Herbin v. Commonwealth, 28 Va. App. 173, 180-81, 503 S.E.2d 226, 230 (1998). Instructions must be supported by more than a mere scintilla of evidence. See Gibson v. Commonwealth, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975), cert. denied, 425 U.S. 994, 96 S. Ct. 2207, 48 L.Ed.2d 819 (1976). In determining whether evidence amounts to more than a scintilla, "we must look at [it] in the light most favorable to [appellant]." Foster v. Commonwealth, 13 Va. App. 380, 383, 412 S.E.2d 198, 200 (1991).

The common law defense of duress excuses acts that would otherwise constitute a crime where the defendant shows that the acts were the product of threats inducing a reasonable fear of immediate death or serious bodily injury. See United States v. Bailey, 444 U.S. 394, 409, 100 S. Ct. 624, 634, 62 L.Ed.2d 575 (1980). If the defendant failed to take advantage of a reasonable opportunity to escape, or of a reasonable opportunity to avoid doing the acts without being harmed, she may not rely on duress as a defense. See id. at 410, 100 S. Ct. at 634-35;

-

United States v. Gordon, 526 F.2d 406, 407-08 (9th Cir. 1975).

Where it is properly shown, duress is a complete defense to a

crime. As has been stated,

> [t]he rationale of the defense is not that
> the defendant, faced with the unnerving
> threat of harm unless he does an act which
> violates the literal language of the
> criminal law, somehow loses his mental
> capacity to commit the crime in question.
> Rather, it is that, even though he has the
> mental state which the crime requires, his
> conduct which violates the literal language
> of the criminal law is justified because he
> has thereby avoided a harm of greater
> magnitude.

W. LaFave & A. Scott, Criminal Law 374 (3d ed. 1983). Vague

threats of future harm, however alarming, will not suffice to

excuse criminal conduct. See United States v. Patrick, 542 F.2d

381, 388 (7th Cir. 1975), cert. denied, 430 U.S. 931, 97 S. Ct.

1551, 51 L.Ed.2d 775 (1977); Gordon, 526 F.2d at 408.

Cull maintains that she "participated in the events out of

fear for her life." She further states in her brief that her

"past experiences with Bitner, Winkler, and Tibbs, and her

passive, nonviolent nature made [her] more susceptible to

duress."

The record, however, shows that Cull knew of the plans to

assault Hanna when the group arrived at the house on Belmont

Avenue in her vehicle that she was driving. She admitted that

she picked up a box cutter with knowledge of the intent of the

group to assault Hanna. In her videotaped confession she

-

acknowledged that after picking up Hanna, she and the other women went to another person's home and stayed there for "45 minutes or so" before taking Hanna to Marsh Field. She stated, "I didn't kick her any more than 15 times." In her confession, she vividly described the attack including the cuts, kicks and beatings with a belt. She stated, "I hit her with [a belt] a couple of times." She acknowledged that they left Hanna at Marsh Field but came back for her several minutes later. They put her into the trunk of Cull's car and Cull drove them all to the Nash Road location. While taking her to Nash Road, the discussion among the women included killing Hanna, cutting off her fingers and cutting out her tongue. In the videotaped confession Cull admitted that she "cut [Hanna] twice" and later stated that one time was at Marsh Field and one time was at Nash Road. She acknowledged that the women came up with a "story" of how Hanna had gotten out of the car earlier in the evening and that none of them had seen her afterwards. Not once during her entire interview with the police detective did Cull mention fear of or threats from Tibbs, Winkler or Bitner. Furthermore, at trial, testimony revealed that the trip from Marsh Field to Nash Road took Cull, who was driving, directly past the Chesterfield Police Headquarters.

This record has no more than a scintilla of evidence, if that, of Cull suffering any threat of immediate death or serious bodily harm if she did not participate in the acts.

-

Additionally, the record shows that she failed to take advantage of a reasonable opportunity to escape her circumstances without being harmed.  Apart from the fact that she was not compelled to participate in the first place, she armed herself with a box cutter with full knowledge of the group's intention and did not abandon the group during the forty-five minute stop at another home before the trip to Marsh Field.  On the way to Nash Road she did not pull into the police station where she most certainly could have abandoned the enterprise without fear of harm.

Based on this record, Cull was not entitled to the instruction on duress, and the trial court did not err by refusing it.

   III.  AVAILABILITY OF VIDEOTAPE TO JURY DURING DELIBERATIONS

The videotaped confession was marked as Exhibit #32 and was played for the jury.  At the time, the trial judge stated it would be "marked and made part of the record" but would not "go to the jury."  The Commonwealth immediately asked "to be heard on that [issue] at break."  Following additional argument of counsel, the trial judge stated, "I'll withhold ruling on it right now.  It's marked as Commonwealth's Exhibit 32 for identification.  If the jury should request the tape, then we'll cross the bridge when we come to it."

When the tape was played for the jury, it was admitted into evidence.  As the Commonwealth's attorney noted, "We didn't

-

offer it for the contents of its plastic and paper; we offered it for the contents of the statement."  Irrespective of any characterization made by the trial judge, the contents of the tape were admitted into evidence when the jury viewed it.  The decision to make the tape available to the jury during deliberations was reserved by the trial judge, presumably, because if the jury did not ask for the tape, he would not have to rule on the question.  The jury did ask for the tape, and the trial judge allowed it to be available to them during deliberations.

As we have previously stated,

> Code § 8.01-381 provides that upon the request of any party, the court shall instruct the jury that they may request exhibits for use during deliberations. Exhibits requested by the jury shall be sent to the jury room or otherwise be made available.  [See] Code § 8.01-381.  An out-of-court statement, whether written or recorded, which is introduced into evidence, is an "exhibit."  Therefore, the jury was entitled to take [appellant's] recorded statement, which was introduced into evidence as an exhibit, into the jury room.

> We reject [appellant's] claim that permitting the jury to have a recorded statement by the accused in the jury room is prejudicial error because it creates a danger that, by replaying it, that part of the evidence will be overemphasized.  This "risk" exists when a jury peruses any exhibit.  The legislature has determined that the jury is entitled to have exhibits in the jury room.  Nothing in the Virginia statutes or case law requires the trial judge to supervise the jury's review of evidence to "prevent overemphasis."  The

-

fact that a jury may dwell upon or emphasize any evidence, whether testimony or exhibits, is within the jury's purview in weighing and considering the evidence. Therefore, the trial court did not err by allowing the jury to have the exhibits, which included [appellant's] recorded statement, in the jury room during deliberations without court supervision.

Pugliese v. Commonwealth, 16 Va. App. 82, 90-91, 428 S.E.2d 16, 23 (1993).

## IV. CONCLUSION

Finding no error, we affirm the convictions.

Affirmed.

-

Benton, J., concurring.

I concur in Parts I and II of the opinion.  I do not join in Part III because I believe that an error was committed.  That error, however, was harmless and does not require a reversal of the convictions.  Therefore, I also join in the judgment affirming the convictions.

                              (A)

During the testimony of a detective, the prosecutor produced the videotape of the detective's interview with Stephanie Cull and played it for the jury without objection.  The transcript, however, does not contain a stenographic record of the words spoken on the videotape as it was played for the jury.  After the jury saw and heard the videotape, the following occurred:

> [PROSECUTOR]:  The Commonwealth would offer
> the tape at this time as Commonwealth's
> exhibit.
>
> [JUDGE]:  Marked as Commonwealth's 32.  It
> will be marked and made a part of the
> record.  It will not go to the jury.
>
> [PROSECUTOR]:  We would like to be heard on
> that at break.
>
> [JUDGE]:  Marked as Commonwealth's 32. . . .

Later, when the prosecutor presented his argument concerning the videotape, the following pertinent statements were made:

> [PROSECUTOR]:  . . . It's an exhibit.  It is
> the demonstrative criminal agency in this

-

case, which is legitimately offered in evidence. And if it is in evidence, like any other exhibit, if the jury asks for it, they should be entitled to review it and examine it.

We didn't offer it for the contents of its plastic and paper; we offered it for the contents of the statement. It would be akin to a written statement. If . . . the defendant made a written confession, The Court would have no problem with that going to the jury if they asked to see it. We would make the same motion with regard to the tape should it arise that the jury asks for it.

[JUDGE]: I'll withhold ruling on it right now. It's marked as Commonwealth's 32 for identification. If the jury should request the tape, then we'll cross the bridge when we come to it.

After all the evidence had been presented and during the jury's deliberation, the jury requested to have the "transcript of the tape." The trial judge told the jury that he "cannot give [the jury] the transcript . . . [because it] was not received in evidence in this case." When the jury asked for the videotape "in lieu of the transcript," the judge ruled as follows:

I've considered Pugliese [v. Commonwealth, 16 Va. App. 82, 428 S.E.2d 16 (1993)]. . . . It was The Court's intention that the videotape be made a part of the record in this case and I do acknowledge that the magic words received in evidence were never uttered by The Court, but the tape was marked for purposes of identification. The Court did, however, make the statement that the tape be made a part of the record and I think that is sufficient for receiving it in evidence. There has been a request for the

-

> tape.  The tape will be played for the jury
> in the jury room.
>
>   The defendant excepts to The Court's
> ruling and that exception is preserved for
> appellate purposes.

(B)

By our Rules of Court "each exhibit offered in evidence, whether admitted or not, and initialed by the judge" is part of the trial record.  Rule 5:10(a)(3).  Thus, Rule 5:10(a)(3) generally requires the trial judge to mark as an exhibit for identification any document or item formally offered as evidence by trial counsel.  See, e.g., State v. Onofrio, 425 A.2d 560, 566 (Conn. 1979) (discussing the reasons why the right to have a proffered exhibit marked for identification is a broad right). The purpose for marking an exhibit for identification is to preserve it for the record.  See Kraus v. Newton, 558 A.2d 240, 241 (Conn. 1989) (holding that marking the exhibit preserves it for the record and "provides an appellate court with a basis for review").  Merely marking an exhibit for identification, however, does not designate that the exhibit has been admitted as evidence.  See Rule 5:10(a)(3).  Items that "were marked for identification and are included in the record" do not become evidence if "they were not received in evidence."  Bowers v. Huddleston, 241 Va. 83, 85, 399 S.E.2d 811, 812 (1991).

The trial judge acknowledged that he had marked the videotape only for identification.  Although it was marked only

-

for identification, the jury had seen and heard the entire videotape, without objection, during the trial. Thus, the oral and visual contents of the videotape became evidence that the jury could consider. That circumstance, however, does not make the videotape itself evidence. Cf. Scott v. Greater Richmond Transit Co., 241 Va. 300, 304-05, 402 S.E.2d 214, 218 (1991) (holding that a statement of a past recollection recorded may be read to the jury but cannot be received in evidence as an exhibit when proffered by the offering party). Moreover, when the videotape was played in the trial court for the jury, the court reporter did not make a stenographic record of its contents. Thus, the record before us contains no transcription of what the jury heard and contains no exhibit admitted in evidence during the trial of that videotape. Cf. Matson v. Wilco Office Supply & Equip., 541 So.2d 767, 769 (Fla. App. 1989) (holding that when a videotape is played at trial it is evidence that must be made a part of the record on appeal either by a stenographic record of the evidence presented at trial or by the videotape being admitted in evidence).

For these reasons, I would hold that the trial judge erred in giving the jury the videotape, which was marked only for identification in the record and which was not properly admitted in evidence at trial. See Brittle v. Commonwealth, 222 Va. 518, 522, 281 S.E.2d 889, 890 (1981) (holding that a jury improperly was permitted to see photographic exhibits that were not

-

admitted in evidence); see also Wilson v. Wooldridge, 118 Va. 209, 216, 86 S.E. 872, 874 (1915) (holding that a motion to make a document an exhibit to be considered by a jury was not timely when it was made "[a]fter all the evidence had been introduced in the case and the jury had been instructed as to the law"). As other courts have held, an exhibit that was not admitted in evidence by the trial judge is not "evidence." See Bowman v. Weill Const. Co., 502 So.2d 133, 136-37 (La. App. 1987) (noting that "[i]tems of evidence which are physically placed in the record . . . , but which are not properly introduced and admitted in evidence by the trial court, may not be considered by any tribunal in deciding the merits of the case"); see also Commonwealth, Dept. of Transp. v. McCrea, 526 A.2d 474, 475 (Pa. Commw. Ct. 1987) (holding that "[i]t is fundamental and essential that, at trial, a document must be offered to and admitted by the court before it may be considered evidence; merely having the document marked as an exhibit, without more, is insufficient").

(C)

The record clearly establishes that after the taking of evidence had ended and while the jury was conducting its deliberations, the trial judge ruled, in effect, that the videotape, which earlier was merely marked for identification, would be admitted as evidence and sent to the jury. Although I believe that ruling came too late, I also believe that in the

-

context of this case, the error was harmless. See Brittle, 222 Va. at 522, 281 S.E.2d at 890 (holding that error is harmful if "an accused in a criminal case . . . has been prejudiced by receipt of the information"). The videotape contained nothing that the jury had not seen or heard in open court. Indeed, the transcript of the trial reflects that the entire videotape was played in open court. No claim is made that the videotape contained extraneous material that was not previously seen by the jury. Obviously, if the videotape had been admitted in evidence as an exhibit during the trial, the jury could have had use of it during its deliberations. See Code § 8.01-381.

Cull contends that if she had known that the judge would admit the videotape as evidence, she would have testified at trial. She contends she was prejudiced by the untimely ruling, which did not allow her the opportunity to testify. Because the jury saw and heard the entire videotape in the Commonwealth's case-in-chief, that contention lacks persuasion. Cull had the opportunity to testify at trial after the videotape was played in open court.

For these reasons, I would hold that the error was harmless and affirm the convictions.