COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Elder and Kelsey

UMAH JOAQUING OWENS

                                          MEMORANDUM OPINION* BY
v.       Record No. 0553-07-1               JUDGE D. ARTHUR KELSEY
                                                 APRIL 8, 2008
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
                            Glen A. Tyler, Judge

            (Rodolfo Cejas, II), on brief, for appellant. Appellant
            submitting on brief.

            (Robert F. McDonnell, Attorney General; Leah A. Darron,
            Senior Assistant Attorney General, on brief), for appellee.
            Appellee submitting on brief.


        A jury found Umah Owens guilty of murdering his wife and using a firearm in the

commission of that murder. On appeal, Owens contests the trial court's admission of certain

evidence against him at trial and challenges the sufficiency of the evidence offered in support of

his convictions. Finding these arguments unpersuasive, we affirm.

                                           I.

        In August 2005, Owens and his wife, Tara, had been separated for four months. On

Tuesday, August 23, police arrested Owens when Tara complained that he had assaulted her by

spitting in her face and pushing her. Based upon that complaint, the juvenile and domestic

relations district court issued an emergency protective order forbidding Owens from having any

contact with Tara for a week.

        A friend, Emily Thomas, posted bail for Owens and secured his release on Wednesday,

August 24. When Thomas picked him up, Owens complained about his wife and declared that

        _____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the "bitch was going to get hers." A day or two later, Owens made a similar threat to another friend, Steven Gale. "I'm going to fuck her ass up," Owens declared.

After dark on Friday, August 26, Gale drove Owens to Tara's apartment. Owens carried "some kind of bag" with him as he got out of Gale's car. Gale remained in the vehicle with the radio on. Owens returned about fifteen minutes later. Just before midnight, Gale dropped Owens off at a Cape Charles beach. Owens made his way to Thomas's home around 1:30 a.m. and spent the night there.

The next day, Saturday, Tara's mother went to Tara's apartment and found the door locked. She entered the apartment through a window and discovered her two young grandchildren unattended. She called police upon finding blood splattered on the floor and walls of the apartment. Police later discovered Tara's body in a cornfield behind the apartment. Tara had fresh abrasions and bruises on her neck, a gunshot wound in her thigh, and at least six blunt force injuries to her head. At trial, the medical examiner testified Tara died by strangulation with the blunt force and gunshot wounds serving as contributing causes. Tara's death occurred, the examiner concluded, sometime on Friday evening.

Police arrested Owens for murder. While awaiting trial, Owens confessed to a cellmate. Owens said Tara had taken out an "assault charge" against him. He went to Tara's apartment in violation of a "restraining order" and "got into some type of struggle" which ended when "he killed her." Owens specifically mentioned, the cellmate recalled, "choking her and a gunshot." Owens added that he believed Tara had been unfaithful to him.

During police interrogation, Owens acknowledged his wife's allegations of spousal abuse that led to his initial arrest and the issuance of the protective order. He also admitted he had a key to his wife's apartment. He denied any knowledge, however, of her murder.

At trial, Owens objected to the admission of the protective order and the accompanying affidavit of his wife alleging spousal abuse. Both the order and the affidavit, Owens argued, violated his rights under the Confrontation Clause of the Sixth Amendment. The trial court excluded the affidavit from evidence but admitted the protective order.

Owens also objected to the testimony of David Poto and Charlene Wilke. Both worked with Tara during the spring and summer of 2005. On various occasions during that time frame, they testified, Tara came to work with black eyes, bruises on her arms, and choke marks on her neck. Owens would come to the restaurant from time to time but never came inside. When Tara went out to talk with him, she would return upset. On one occasion when Owens and Tara "were outside fighting with each other," Poto told them to take the dispute "somewhere else."

Owens did not testify at trial. After the jury found Owens guilty, Owens moved the court to set the verdict aside claiming it rested on insufficient evidence. The trial court denied the motion and entered final judgment.

II.

On appeal, Owens argues that his convictions should be overturned because the trial court (a) violated his Confrontation Clause rights by admitting into evidence the emergency protective order issued by the JDR district court; (b) erred by permitting Tara's coworkers to testify about her physical injuries and what they observed of her relationship with Owens; and (c) erroneously failed to set aside the verdict.

A. CRAWFORD, HEARSAY & THE PROTECTIVE ORDER

Relying on Crawford v. Washington, 541 U.S. 36 (2004), Owens argues the protective order constituted testimonial hearsay admitted into evidence in violation of his rights under the Confrontation Clause of the Sixth Amendment. The trial court rejected this argument, as do we.

The Confrontation Clause, when it applies at all,[1] applies only to testimonial hearsay. Non-hearsay falls outside the scope of the Confrontation Clause. See Hodges v. Commonwealth, 272 Va. 418, 435, 634 S.E.2d 680, 689 (2006). Hearsay involves out-of-court statements offered for the truth of the matter asserted. The hearsay rule does not apply to statements offered into evidence for reasons other than to prove the truth of the matter asserted — to show, for example, the intent of the declarant or the effect on the hearer.

In this case, the Commonwealth offered the protective order into evidence not to prove that Owens in fact assaulted Tara or that the JDR district court thought enough of the allegation to forbid him from seeing her for a week. The protective order was offered to establish Owens's motive in killing Tara. Upon being bailed out of jail, Owens bitterly complained that Tara's complaint resulted in his arrest and the issuance of the protective order. "The bitch was going to get hers," he declared to Thomas. To Gale, Owens warned: "I'm going to fuck her ass up." In context, then, the protective order served the non-hearsay purpose of explaining why Owens murdered his wife. Its admission into evidence did not offend the hearsay rule and, as a result, could not constitute testimonial hearsay in violation of the Confrontation Clause.[2]

---

[1] Given our holding, we need not address whether the protective order would be testimonial even if hearsay. See, e.g., Anderson v. Commonwealth, 274 Va. 469, 480, 650 S.E.2d 702, 708 (2007) (holding that chain-of-custody facts are not "accusatory" to defendant), affirming 48 Va. App. 704, 715, 634 S.E.2d 372, 377 (2006) (concluding Code § 19.2-187.01's inference of valid chain of custody "provides only foundation evidence that cannot be fairly characterized as accusatorial"); Jasper v. Commonwealth, 49 Va. App. 749, 644 S.E.2d 406 (2007) (holding that a DMV transcript is nontestimonial); Michels v. Commonwealth, 47 Va. App. 461, 624 S.E.2d 675 (2006) (holding that Delaware public records showing nonexistence of defendant's business entities were nontestimonial). For similar reasons, we do not address whether the forfeiture-by-wrongdoing doctrine would exempt the decedent's statements from the reach of the Confrontation Clause. See Davis v. Washington, 547 U.S. 813, 833-34 (2006); Crawford, 541 U.S. at 62 (accepting that the "rule of forfeiture by wrongdoing extinguishes confrontation claims").

[2] The Commonwealth argues that, even if the protective order did violate the Confrontation Clause, the same information came into the evidentiary record without objection from multiple other sources. See, e.g., Pitt v. Commonwealth, 260 Va. 692, 695-96, 539 S.E.2d

B.  ADMISSION OF PRIOR BAD ACTS

Owens also contests the trial court's admission into evidence of the testimony of Tara's coworkers about her physical condition and the acrimony they observed between Owens and Tara.  This evidence, Owens argues, was both logically and legally irrelevant.  We disagree.  "The evidence here in dispute showed the conduct and feelings of the defendant toward his wife, established their prior relations, and proved events connected with and leading up to the murders for which the defendant was on trial."  Gibson v. Commonwealth, 216 Va. 412, 416, 219 S.E.2d 845, 848 (1975) (admitting evidence of violent behavior seven weeks prior to the murder).[3]

Owens correctly points out that evidence of a prior abusive relationship should be excluded if unduly prejudicial.  "In a sense," however, "all 'evidence tending to prove guilt is prejudicial' — at least from the point of view of the person standing trial."  Thomas v. Commonwealth, 44 Va. App. 741, 757-58, 607 S.E.2d 738, 746 (quoting Powell v. Commonwealth, 267 Va. 107, 141, 590 S.E.2d 537, 558 (2004)), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).  Virginia law excludes relevant evidence "only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences.  And even then, it becomes a matter of degree."  Id.  "We generally defer to trial judges on this subject because they, unlike us, participate first person in the evidentiary process and acquire

---

77, 79 (2000) (finding alleged violation of Confrontation Clause rendered harmless because challenged evidence was cumulative of other, properly admitted evidence); Dearing v. Commonwealth, 260 Va. 671, 674, 536 S.E.2d 903, 904 (2000) (finding Confrontation Clause violation harmless because the challenged "testimony was merely cumulative of the other evidence adduced by the Commonwealth"); Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997) ("Improper admission of evidence does not create reversible error when it is merely cumulative of other competent evidence properly admitted.").

[3] See also Sutphin v. Commonwealth, 1 Va. App. 241, 245-46, 337 S.E.2d 897, 899 (1985) (explaining that evidence of prior acts of an accused towards a victim is admissible to "show the conduct and feeling of the accused toward his victim, or to establish their prior relations").  Such evidence "shows the conduct and feeling of the defendant toward his alleged

competencies on the subject that we can rarely duplicate merely by reading briefs and transcripts." Id. at 758, 607 S.E.2d at 746.

Under the circumstances of this case, we see no reason to question the trial court's judgment call on this issue. The evidence was probative of Owens's relationship with his wife, showing a pattern of abuse leading directly to her murder. That this evidence reflected poorly on Owens does not require its exclusion. A criminal defendant "has no right to have the evidence 'sanitized' so as to deny the jury knowledge of all but the immediate crime for which he is on trial." Gregory v. Commonwealth, 46 Va. App. 683, 696-97, 621 S.E.2d 162, 169 (2005) (citation omitted); see also Jones v. Commonwealth, 32 Va. App. 30, 41, 526 S.E.2d 281, 286 (2000).

## C.  SUFFICIENCY OF THE EVIDENCE

We likewise reject Owens's argument that the evidence failed to prove his guilt beyond a reasonable doubt. When a jury decides the case, Code § 8.01-680 requires that "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision." Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). Put another way, a reviewing court does not "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." Bolden v. Commonwealth, 49 Va. App. 285, 292, 640 S.E.2d 526, 530 (2007) (citation omitted), aff'd, 275 Va. 144, 654 S.E.2d 584 (2008). Instead, the "issue upon appellate review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

---

victim" when it "establishes prior relations" between them. Ryan v. Commonwealth, 219 Va. 439, 447, 247 S.E.2d 698, 704 (1978).

Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).

Ample evidence supports the rationality of the jury's finding that Owens murdered his wife and used a firearm while doing so. Days before the murder, Owens twice warned that he intended to retaliate against his wife for filing a criminal domestic assault charge and obtaining a protective order. He went to Tara's apartment the night of the murder and later confessed to a cellmate that he killed her that night. In describing the murder, Owens specifically mentioned "choking her" and a "gunshot." For these reasons, we reject as meritless his assertion that the Commonwealth failed to prove his guilt beyond a reasonable doubt.

III.

In sum, the trial court did not err in admitting into evidence the protective order and the testimony of Tara's coworkers. Nor did the court improperly deny Owens's motion to set aside the verdict due to insufficient evidence. We thus affirm his convictions for first-degree murder and the use of a firearm during the commission of murder.

Affirmed.