COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Kelsey and McClanahan
Argued at Richmond, Virginia


JOHN DAVIS ROCK, III

v.       Record No. 2107-03-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ELIZABETH A. McCLANAHAN
MARCH 15, 2005


FROM THE CIRCUIT COURT OF ESSEX COUNTY
Harry T. Taliaferro, III, Judge

Scot A. Katona (Dillard and Katona, on brief), for appellant.

Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


John Davis Rock, III appeals his sentencing upon conviction of conspiracy to commit

robbery.  Rock contends that the trial court erred in allowing the Commonwealth to present to

the jury victim impact testimony by the family of Michael Cook, who was murdered during the

conspired robbery.  For the reasons that follow, we affirm.

I.  BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences that may be drawn therefrom."  Kelly v. Commonwealth, 41 Va. App. 250,

254, 584 S.E.2d 444, 446 (2003) (en banc) (citations omitted).

Four masked intruders, two of whom were carrying assault rifles and one of whom was

carrying a handgun, broke into Pamela Gravely's home in Essex County, Virginia.  Gravely,

Michael Cook, Jill Cossica and Scott Cox were present in the living area of the home, and Gravely's two daughters were in a bedroom. Gravely removed a mask from one of the intruders while the intruder was present in her home. One of the intruders demanded that Gravely, Cook, Cossica and Cox get down on the floor. Another intruder demanded that Gravely's daughters go into the living area with the others. Cook approached one of the intruders who had a gun. The intruder shot Cook, killing him. All four intruders fled.

DNA from the mask Gravely removed from one of the intruders matched that of Andre White. Subsequently, White, Jason Hunt, Michael Williams and Rock were arrested for crimes related to the intrusion into Gravely's home, including attempted robbery, statutory burglary, abduction, and murder. White and Hunt pled guilty to crimes related to the break-in and homicide.

At Rock's trial, both White and Hunt testified that Rock gave them directions to Gravely's home and participated in the planning of the robbery. Gravely testified that Rock visited her home in Essex County several times in the past. The jury convicted Rock of conspiracy to commit robbery, but acquitted him of eight other felony counts relating to the attempted robbery and murder at Gravely's home.

At the sentencing hearing, over Rock's objection, the court permitted the Commonwealth to present victim impact testimony of the murder victim's brother, Eugene Cook, and the mother of the murder victim's children, Sarah Seely. Following the jury's recommendation, the trial court sentenced Rock to six years in the state penitentiary.

II. ANALYSIS

Rock asserts on appeal that the trial court abused its discretion in allowing victim impact testimony by Cook's family during the sentencing phase of his trial because Rock was convicted of conspiracy to commit robbery, but was acquitted of Cook's murder. More specifically, Rock

- 2 -

argues that the victims who provided impact testimony at the sentencing phase were not victims within the meaning of Code § 19.2-11.01(B) because they did not suffer as a "direct result" of Rock's conspiracy to commit robbery. Rock argues that any connection between the conspiracy to commit robbery conviction and the murder is "purely speculative." We disagree.

In 1995, in recognition of the concern for the victims and witnesses of crime, the General Assembly enacted the Crime Victim and Witness Rights Act, Code §§ 19.2-11.01-11.4. The purpose of the statute is "to ensure that the full impact of crime is brought to the attention of the courts of the Commonwealth; that crime victims and witnesses are treated with dignity, respect and sensitivity; and that their privacy is protected to the extent permissible under law." Code § 19.2-11.01(A).

Prior to 1998, the statutes addressed victims' rights in the sentencing process only through the use of a pre-sentence or written report containing victim impact statements. See Code § 19.2-11.01(A)(4)(a) ("Victims shall be given the opportunity . . . to prepare a written victim impact statement prior to sentencing of a defendant . . . ."); Code § 19.2-264.5; Code § 19.2-299.1 ("[The] presentence report . . . shall, with the consent of the victim . . . include a Victim Impact Statement."). Such statements generally were available only to the judge. Thomas v. Commonwealth, 263 Va. 216, 235, 559 S.E.2d 652, 663 (2002). The pre-1998 statutes did not provide for oral testimony by the victim during the sentencing proceeding.

In 1998, the General Assembly expanded the permissible scope of the Act by establishing the victim's right to present victim impact *oral testimony* during the sentencing proceeding. Code §§ 19.2-11.01(A)(4)(c) and 19.2-295.3; see also Thomas, 263 Va. at 235, 559 S.E.2d at 662-63. Code § 19.2-11.01(A)(4)(c) provides that "[o]n motion of the attorney for the Commonwealth, victims *shall* be given the opportunity, pursuant to §§ 19.2-264.4 and

19.2-295.3, to testify prior to sentencing of a defendant regarding the impact of the offense."

(Emphasis added). Code § 19.2-295.3[1] states:

> In cases of trial by jury or by the court, upon a finding that the defendant is guilty of a felony, the court *shall* permit the victim, as defined in § 19.2-11.01, upon motion of the attorney for the Commonwealth, to testify in the presence of the accused regarding the impact of the offense upon the victim.

(Emphasis added). Whereas "[t]he written statements were generally available only to the judge in the sentencing process, these amendments allowed the victim testimony to be presented to and considered by the jury in its sentencing deliberations." Thomas, 263 Va. at 235, 559 S.E.2d at 663. Under these amendments, victims who wish to offer impact testimony at the sentencing hearing of a defendant found guilty of a felony have a statutorily protected right to testify in the presence of the jury.

The pertinent language of Code §§ 19.2-11.01(A)(4)(c) and 19.2-295.3 is mandatory. By explicitly providing that victims *shall* be allowed to testify regarding the impact of the offense on them when the defendant is found guilty of a felony, Code § 19.2-295.3 establishes the victim's right to testify without interference. However, those persons given this right must meet the definition of "victim" as defined in Code § 19.2-11.01(B). Thomas, 263 Va. at 235, 559 S.E.2d at 663. Code § 19.2-11.01(B) defines a "victim" as:

> (i) a person who suffered physical, psychological or economic harm as a *direct result* of the commission of a felony, . . . (ii) a spouse or child of such a person, . . . or (v) a spouse, parent, sibling or legal guardian of such a person who is physically or mentally incapacitated or was the victim of a homicide . . . .

(Emphasis added). Once it is determined that the persons who offer their impact testimony are "victims" within the meaning of the statute, the court *shall* permit the victims to testify regarding the *impact* of the offense. See Code § 19.2-295.3.

---

[1] A 2004 amendment to this statute substituted "Whether by trial or upon a plea of guilty" for "In cases of trial by jury or by the court."

At Rock's trial on all nine charges, he was acquitted of the murder charge, but was convicted of the conspiracy to commit robbery charge. The trial court recognized that the jury heard the evidence on all nine charges, and the court made the factual finding that the evidence showed that the murder occurred as a direct consequence of the conspiracy to commit robbery when it made its evidentiary ruling:

> Certainly the jury has every detail about what happened. They heard it for three days, exactly what happened in the robbery of this trailer. There is hardly a detail left that they have not heard. They considered that in coming to their verdict in this case. *And I know of no practical way at this point to put limitation on what is a direct consequence of that conspiracy, which is that a man died as a result of it.*

(Emphasis added). This factual finding was a prerequisite to the court's determination that Eugene Cook and Sarah Seely satisfied the legal definition of victim under Code §19.2-11.01(B) and that, therefore, their victim impact testimony was admissible. See Claytor v. Anthony, 27 Va. (6 Rand.) 285, 299-300 (1828) (inquiry involved a preliminary determination of fact by the judge in order that he or she may determine whether the evidence is admissible); see also Rabeiro v. Commonwealth, 10 Va. App. 61, 64, 389 S.E.2d 731, 732 (1990) ("Factual determinations which are necessary predicates to rulings on the admissibility of evidence and the purposes for which it is admitted are for the trial judge [to decide].").

Determination of the admissibility of evidence lies within the broad discretion of the trial court. See Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). The trial court's ruling regarding the admissibility of evidence will not be disturbed on appeal absent a clear abuse of discretion. See Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 236-37 (1999). "Given the 'broad discretion' of a trial judge over evidentiary matters, we apply a deferential abuse-of-discretion standard of appellate review." Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004) (citations omitted); see Valentine v. Commonwealth,

- 5 -

28 Va. App. 239, 244, 503 S.E.2d 798, 800 (1998); Herbin v. Commonwealth, 28 Va. App. 173, 185, 503 S.E.2d 226, 232 (1998). "We review the trial court's factual findings only to determine if they are plainly wrong or devoid of supporting evidence." Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002).

We cannot say that the trial court was plainly wrong or that its factual findings were without supporting evidence when it made the factual determination that the murder was a direct consequence of the conspiracy. Rock assembled the men, planned the robbery that involved the use of guns, and directed the men to Gravely's home. The robbery occurred contemporaneously with Cook's murder, for which the other defendants pled guilty. Rock was the only defendant who knew Gravely, had been in her home in the past, and knew where her home was located. White, Hunt and Williams did not know Gravely, did not know where Gravely lived, and had never been in her home, where Cook was murdered. These facts and circumstances provide a rational basis for concluding that the murder in Gravely's home during the robbery was a direct consequence of the conspiracy to rob her home. Applying the statutes to this case, and in light of the General Assembly's purpose in enacting the Crime Victim and Witness Rights Act,[2] we hold that the trial court did not abuse its discretion by admitting the victim impact testimony during the sentencing proceeding.

Furthermore, we hold that the admissibility of the victim impact testimony was relevant and within the sound discretion of the trial court even if persons who are not deemed "victims" under the statute offered the testimony. See Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 905 (1997). In Thomas, the Supreme Court held the trial court erred by failing to

---

[2] In Beck v. Commonwealth, 253 Va. 373, 384, 484 S.E.2d 898, 905 (1997), the Supreme Court observed that "[t]he clear import of the [Crime Victim and Witness Rights] Act is to preserve the right of victims of crimes to have the impact of those crimes upon their lives considered as part of the sentencing process, if that is their wish . . . ."

- 6 -

apply the proper test to the defendant's motion to change venue. Although not dispositive of the case, the court addressed the admissibility of victim impact testimony and whether persons who do not meet the definition of victim under the statute have a right to testify. In Thomas, a cousin of the murder victim and the victim's fiancé were allowed to testify in the penalty phase of the trial where the potential punishment was death. 263 Va. at 233, 559 S.E.2d at 662. The Court deemed admissible relevant victim impact testimony by persons who did not meet the statutory definition of "victim." Id. at 235, 599 S.E.2d at 663. The Court held that "[w]hile such persons do not have a statutorily protected right to testify, their testimony is not automatically barred by Code § 19.2-264.4(A1)." Id. The Thomas Court relied on Beck, stating Beck's determination that:

> [T]he statutes do not limit evidence of victim impact to that received from the victim's family members. Rather, the circumstances of the individual case will dictate what evidence will be necessary and relevant, and from what sources it may be drawn. In a capital murder trial, as in any other criminal proceeding, the determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion.

253 Va. at 384-85, 484 S.E.2d at 905.

"Evidence which tends to prove a material fact is relevant and admissible, unless excluded by a specific rule or policy consideration." Pughsley v. Commonwealth, 33 Va. App. 640, 645, 536 S.E.2d 447, 449 (2000) (internal quotation marks and citations omitted). The Beck Court reasoned that "[i]n a capital murder trial, as in any other criminal proceeding, the determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." Beck, 253 Va. at 384-85, 484 S.E.2d at 905. Although the specific statute at issue in Thomas is not at issue in this case, we find that the rationale of the case is applicable. Congdon v. Congdon, 40 Va. App. 255, 265, 578 S.E.2d 833, 838 (2003) (noting that the principle that courts are bound by the doctrine of *stare decisis*

- 7 -

"applies not merely to the literal holding of the case, but also to its *ratio decidendi* -- the essential rationale in the case that determines the judgment"). Guided by these principles, we perceive no sound reason why relevant victim impact testimony that may be considered by a jury in a capital case should not likewise be considered in a non-capital case. Accordingly, we hold that Code §§ 19.2-295.3 and 19.2-11.01(B) do not limit the admission of relevant evidence.[3] Because the trial court, acting within its sound discretion, determined that Eugene Cook and Sarah Seely's testimony was relevant to Rock's sentencing for conspiracy to commit robbery, we cannot say the trial court abused its discretion in admitting this evidence.

Finally, Rock's argument that the prejudicial effect of the testimony outweighed its probative value ignores the statutory *mandate* of Code §§ 19.2-295.3 and 19.2-11.01(A)(4)(c).[4] Those sections provide a statutorily protected right for victims to testify at the sentencing hearing regarding the impact of the offense upon them. Both statutes *mandate* that a victim be given the opportunity to testify.

---

[3] On appeal, Rock did not contend that the victim impact testimony was outside the procedural boundaries and limited scope of the admissibility of evidence under the bifurcation statute, Code § 19.2-295.1. We, therefore, do not address this issue because it is waived under Rule 5A:20(e).

[4] Rock only appeals his sentence in this case, and the dissent suggests that the victim impact testimony's only purpose was to "add an emotional element far out of proportion to the crime for which Rock was convicted." However, "'[w]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion.'" Fortune v. Commonwealth, 12 Va. App. 643, 651, 406 S.E.2d 47, 51 (1991) (quoting Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977) (citation omitted)). The jury's recommendation and trial judge's sentence in this case were clearly within the statutory limits for conspiracy to commit robbery. See Code §§ 18.2-10, 18.2-22.

- 8 -

## III.  CONCLUSION

We hold the trial court did not abuse its discretion in permitting the murder victim's brother and mother of his children to testify in the sentencing proceeding about the impact of the offense upon them and upon the victim's children.  We affirm the judgment of the trial court.

<u>Affirmed.</u>

Benton, J., dissenting.

The jury acquitted John Davis Rock of eight offenses: first-degree murder of Michael Cook, attempting to rob Cook, attempting to rob Scott Cox, attempting to rob Pamela Gravely, abduction of Jamie Gravely, abduction of Jessica Gravely, breaking and entering with the intent to commit a felony, and use of a firearm in the commission of robbery. The jury convicted Rock only of conspiracy to commit the robbery.

By statute, a trial judge "shall permit the victim, as defined in [Code] § 19.2-11.01 . . . to testify . . . regarding the impact of the offense upon the victim." Code § 19.2-295.3.

> For purposes of this chapter, "victim" means (i) a person who has suffered physical, psychological or economic harm as a direct result of the commission of a felony . . . , or (v) a spouse, parent, sibling or legal guardian of such a person who is physically or mentally incapacitated or was the victim of a homicide.

Code § 19.2-11.01(B).

Application of the provisions of Code §§ 19.2-295.3 and Code § 19.2-11.01 involves a mixed question of law and fact. See Smyth County Comm. Hospital v. Town of Marion, 259 Va. 328, 336, 527 S.E.2d 401, 405 (2000) (holding that application of a statutory requirement "is a mixed question of fact and law"). When we review mixed questions of law and fact on appeal, we do so *de novo* and "are not bound by the trial [judge's] determination in this regard." Id. The trial judge's determination that the Cook family were "victims" who suffered as a "direct result" of the robbery conspiracy was a mixed question of law and fact that we review *de novo*, and not for abuse of discretion. It is the province of this Court to define the statutory standard.

Code § 19.2-295.3 allows for victim impact statements during sentencing. However, by any ordinary understanding of the statutory language, the victim that the statute references is the victim of the felony for which the defendant is found guilty. The pertinent provision reads: "Whether by trial or upon a plea of guilty, *upon a finding that the defendant is guilty of a felony*,

- 10 -

the court shall permit the victim . . . to testify in the presence of the accused regarding the impact of the offense upon the victim." Id. (emphasis added). In this case, the scope of the victim impact testimony referenced in Code § 19.2-295.3 could only refer to the conspiracy to commit robbery, the sole offense for which the jury convicted Rock. When the jury convicted Rock only for conspiracy to commit robbery, the statutory definition of "victim" became fixed with reference to that offense.

Code § 19.2-295.3 explicitly defines "victim" as a person who suffers harm as a "direct result" of the commission of a felony offense. In no way can it be said that the murder of Cook was the direct result of Rock's participation in the conspiracy to commit robbery. When used as an adjective, the relevant meaning of "direct" is "without intervening persons, conditions, or agencies; immediate: [as in] direct sunlight [or] direct answer" or "lacking compromising or mitigating elements." American Heritage Dictionary 400 (Houghton Mifflin, 2nd ed. 1991). A "result" is "[t]he consequence of a particular action, operation, or course; [an] outcome." Id. at 1054. Thus, a "direct result" is the consequence of an action without intervening circumstances, or without compromising or mitigating elements. In other words, the action must immediately produce a result; it is a consequence flowing definitely, immediately, and largely automatically. It is a result that in the ordinary course of human experience can be expected automatically to occur. See generally Blue Stone Lane Company v. Neff, 259 Va. 273, 277-78, 526 S.E.2d 517, 518-19 (2000) (in the context of damages, direct means flowing naturally or ordinarily from conduct or is a result that can be expected in the ordinary course of human experience); State v. Smith, 532 S.E.2d 773, 786 (N.C. 2000) (defining direct consequences as those having a "definite, immediate and largely automatic effect"); Frey v. State, 265 P.2d 502, 505 (Okla. App. 1953) (holding that, in the criminal context, a "direct result" is one which immediately and necessarily follows an act).

- 11 -

Contrary to the plain meaning of direct result, the Commonwealth argues that, despite the number of intervening persons and conditions between the conspiracy to commit robbery and Cook's murder, the result was "direct." If that were the case, the jury certainly would have convicted Rock on all the related charges. However, they did not. Simply put, the Commonwealth's argument rests upon an interpretation derived in patent disregard of the jury's acquittal of Rock of the murder charge. Significantly, the jury received instructions concerning principal in the second degree liability and also rejected that as a basis for convicting Rock for any of these eight offenses, including the murder. By acquitting Rock, the jury necessarily rejected the Commonwealth's attempt to implicate him in these eight offenses. The jury found that Rock was not present and that he did not know of or participate in the killing. Thus, the jury determined that there were a number of circumstances attenuating any connection between the conspiracy to commit robbery and the killing. Without Rock, each of those convicted for the crimes made an individual decision to commit these other offenses and each made a separate decision to carry a weapon. The actual killer made a decision, remote from Rock's participation, to shoot Cook. These intervening events demonstrate that the killing cannot be considered a direct result of the conspiracy to commit robbery within the meaning of the statute. Thus, the Cook family cannot be "victims" within the meaning of the statute.

While "victim impact testimony is relevant to punishment in a capital murder prosecution," Weeks v. Commonwealth, 248 Va. 460, 476, 450 S.E.2d 379, 389-90 (1994), none of the factors that bear on punishment for the murder charge are relevant to sentencing Rock. Thus, this case is unlike Beck v. Commonwealth, 253 Va. 373, 484 S.E.2d 898 (1997), where the accused was convicted of capital murder. Indeed, the jury acquitted Rock of murder. In determining which punishment to impose in a capital murder trial, Code § 19.2-264.2 requires a jury to consider, first, whether "there is a probability that the defendant would commit criminal

- 12 -

acts of violence that would constitute a continuing serious threat to society," and second, "that his conduct in committing the offense for which he stands charged was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim." By statute, these factors are relevant only "[i]n assessing the penalty of any person convicted of an offense for which the death penalty may be imposed." Code § 19.2-264.2. Yet, this evidence was allowed in Rock's sentencing even though he was acquitted of murder.

It is clear that the decisions in Beck and Thomas v. Commonwealth, 263 Va. 216, 559 S.E.2d 652 (2002), address factors bearing only upon capital murder convictions, and they demonstrably establish the prejudice the victim impact testimony had on Rock in this case. The testimony about psychological and economic harm to Cook's family resulting from a killing caused by another was unduly prejudicial and inadmissible at Rock's sentencing. "Evidence as to the result of another defendant's trial for the same crime is irrelevant to the determination by the jury of the appropriate punishment for the defendant whose sentence is being weighed." Coppola v. Commonwealth, 220 Va. 243, 254, 257 S.E.2d 797, 805 (1979). The victim impact evidence, therefore, was irrelevant to the conspiracy to commit robbery, and it encouraged the jury to rely upon raw emotions and other arbitrary factors in sentencing Rock. This evidence gave the Commonwealth the opportunity to divert the jury's attention from the offense for which it convicted Rock and to obtain punishment for the very offense for which the jury acquitted Rock.

When "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 527 (1991). The victim impact testimony had no other effect than to inflame the jury and to prejudice Rock during sentencing. The testimony from Cook's family members about the impact of his death upon them and his

- 13 -

dependents provided a component to Rock's sentencing that had no purpose except to add an emotional element far out of proportion to the crime for which Rock was convicted. Unlike Beck, where the Supreme Court in addressing the issue of relevance "stress[ed] that [Beck's trial] was a trial without a jury," 253 Va. at 385, 484 S.E.2d at 906, Rock's trial was before a jury. Unlike a judge, a jury is not "uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible." Id. (citation omitted).

For these reasons, I would hold that the trial judge committed reversible error in permitting testimony at the penalty phase about the murder of Cook and the effect of the murder on his family.