COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Petty
Argued at Salem, Virginia


CALVIN EARNEST MYERS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0986-07-3                      JUDGE JAMES W. HALEY, JR.
                                                         AUGUST 12, 2008
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
                            Henry A. Vanover, Judge

         Richard C. Patterson (Gillespie, Hart, Altizer & Whitesell, P.C., on
         brief), for appellant.

         Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
         McDonnell, Attorney General, on brief), for appellee.


                              I.  INTRODUCTION

       Calvin Earnest Myers maintains the trial court erred during his sentencing proceeding by

admitting evidence from his ex-girlfriend, P.B., contained in a victim impact statement, and

evidence in a pre-sentence report dealing with the history of his relationship with P.B.  He argues

that P.B. is not a "victim" for purposes of the impact statement and that the pre-sentence report

improperly contains references to unadjudicated criminal conduct involving P.B.  In addition to

the latter's inadmissibility, he continues, such references permitted the trial court to sentence in

violation of the rule of Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny.  We

affirm.

    * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## II. FACTS

In the early morning of January 14, 2006, Myers broke into the home of Shannon Dwayne Minton and Jessica Minton, his wife, and their three-year-old and two-month-old children. Jessica Minton is the sister of P.B. Myers and P.B. have a fourteen-month-old daughter. Myers, who was armed with a shotgun, demanded Jessica attempt to have P.B. bring his daughter to him. Jessica called her mother and older sister, Trish, leaving messages that Myers had kicked in the door and had a gun.

P.B. was contacted in Ohio and advised of the situation. After holding the Mintons at gunpoint for nine hours, Myers eventually surrendered without incident to a Tazewell County Sheriff's Office S.W.A.T. team. Prior to January 14, 2006, P.B. had obtained a protective order against Myers. The order remained effective at the time of the incident.

Myers entered into a plea agreement with the Commonwealth, whereby he agreed to plead no contest to six charges, including burglary while armed with a deadly weapon in violation of Code § 18.2-89, two counts of abduction in violation of Code § 18.2-47, two counts of using a firearm while committing a felony in violation of Code § 18.2-53.1, and possession of a firearm while subject to a protective order in violation of Code § 18.2-308.1:4. The Commonwealth dropped other pending charges and agreed not to charge Myers with any previous crimes related to his relationship with P.B. The circuit court accepted the plea agreement in a hearing held on January 26, 2007.

At the sentencing hearing on March 27, 2007, the trial court admitted P.B.'s victim impact statement over objection. She wrote that her relationship with Myers had been "very abusive" and that Myers had "choked [her] numerous times." This latter statement was the only reference to specific unadjudicated criminal acts. Her statement continued: "We kept getting phone calls, the police advised us to stay in Ohio. I was scared to death. . . . I knew what

[Myers] was capable of . . . . I was waiting in horror to hear what happened and we finally got the call that my family was ok."

No objection was made as to the Mintons' impact statements. As related by Jessica Minton in part: "He told us that when [P.B and a police officer] came he was going to shoot their heads off . . . . I had seen him a couple of times when he got violent towards [P.B.]." Shannon Minton's victim impact statement contained the following: "I have heard stories of [Myers'] violent past and know of his and [P.B.'s] abusive relationship, so I knew the threats of 'bloodshed,' and 'you will see someone die' . . . were to be taken seriously . . . . [Myers] threatened to kill . . . [P.B.]."

With respect to the pre-sentence report, Myers likewise objected only to that portion of the pre-sentence report dealing with P.B.'s statements to Detective Anne Hickman of the Tazewell County Sheriff's Office concerning unadjudicated criminal acts. Those acts included repeated assaults, forcible anal, oral, and vaginal sex, and other sexual matters for which detail is not here necessary.

At the conclusion of the hearing, the court sentenced Myers to forty years imprisonment on the burglary charge, ten years on each of the abduction charges, three years and five years on the use of firearm charges, and twelve months on the possession of a firearm charge. The court suspended the burglary sentence.

### III. ANALYSIS

#### Standard of Review

A circuit court has broad discretion in determining the admissibility of evidence during sentencing proceedings. Runyon v. Commonwealth, 29 Va. App. 573, 576, 513 S.E.2d 872, 874 (1999). We review its decisions only for abuse of discretion. Mitchell v. Commonwealth, 25 Va. App. 81, 84, 486 S.E.2d 551, 552 (1997).

- 3 -

The Impact Statement

Code § 19.2-299.1 provides that a pre-sentence report "shall, with the consent of the victim, as defined in § 19.2-11.01, in all cases involving offenses other than capital murder, include a Victim Impact Statement." Code § 19.2-11.01(B) defines a victim in relevant part as "a person who has suffered physical, psychological or economic harm as a direct result of the commission of a felony."

In Rock v. Commonwealth, 45 Va. App. 254, 257, 610 S.E.2d 314, 315 (2005), the defendant had been convicted of conspiracy to commit a robbery but acquitted of a murder committed by others during the robbery when he was not present. At Rock's sentencing, the trial court permitted testimony from the murder victim's brother and the mother of the murder victim's children. Id. Relying on Code § 19.2-11.01(B), quoted above, Rock objected, arguing that these individuals were not victims, in that any impact they suffered was not the "direct result" from his participation in the robbery conspiracy. Id. at 257-58, 610 S.E.2d at 315. In affirming, we noted that the determination by the trial court that the brother and mother suffered as a direct result of the conspiracy and were, accordingly, victims, was a factual one subject to appellate deference. Id. at 260, 610 S.E.2d at 317.

Here, the evidence even more strongly supports the trial court's decision to admit P.B.'s victim impact statement. Initially, we note that the goal of Myers' intrusion into the Mintons' home was to force P.B. to come to that home and bring their child. If she had done so, according to Myers, he was going to "blow her head off" with the shotgun he possessed. The Mintons were the means Myers employed to achieve those potential ends. That being said, P.B. clearly suffered "psychological" harm as the direct result of Myers' actions. She "was scared to death" and "was waiting in horror to hear what happened" to her sister, Jessica, and Jessica's family. Indeed, the felonies Myers committed were all directed towards forcing P.B. to bring the child to

- 4 -

the Mintons where he could kill P.B.  Thus, her psychological harm was the "direct result" of those felonies.[1]

### The Pre-Sentence Report

A pre-sentence report is to include "the history of the accused . . . and all other relevant facts, to fully advise the court so the court may determine the appropriate sentence to be imposed."  Code § 19.2-299(A).  That report may include "evidence of unadjudicated criminal behavior."  Thomas v. Commonwealth, 18 Va. App. 656, 659, 446 S.E.2d 469, 471 (1994) (*en banc*).  Thus, in another case, we affirmed the trial court's decision to admit "evidence that [the defendant] made a threatening phone call to his former girlfriend."  Wolfe v. Commonwealth, 37 Va. App. 136, 143, 554 S.E.2d 695, 698 (2001).

All the felonies for which Myers was to be sentenced were necessarily and inexorably intertwined with the history of his relationship to P.B., and the facts, including unadjudicated criminal acts committed against P.B., contained in that history were relevant for the trial court to consider in fashioning an appropriate sentence.  Thus, the trial court did not err in considering them.

### Apprendi

Myers further asserts on brief that references in the victim impact statement and the pre-sentence report relating to his conduct towards P.B. permitted the trial court to enhance

---

[1] For this reason, we need not address whether the evidence would have been admissible even if P.B. fell outside the statutory definition of a victim.  See Rock, 45 Va. App. at 261, 610 S.E.2d at 317 ("Furthermore, we hold that the admissibility of the victim impact testimony was relevant and within the sound discretion of the trial court even if persons who are not deemed 'victims' under the statute offered the testimony."); see also Washington v. Commonwealth, 48 Va. App. 486, 492, 632 S.E.2d 625, 628 (2006) (holding that "the reference to Code § 19.2-295.1, as set forth in § 19.2-295.3, is not intended to limit victim impact testimony but merely identifies the sentencing phase of the trial as the appropriate forum for victim impact testimony").

punishment in violation of Apprendi, 530 U.S. at 466, and Blakely v. Washington, 542 U.S. 296 (2004).

As we noted in Washington v. Commonwealth, 46 Va. App. 276, 291-92, 616 S.E.2d 774, 782 (2005) (*en banc*):

> The United States Supreme Court has recently re-affirmed the fundamental constitutional principle that: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 756, 160 L. Ed. 2d 621 (2005); see also Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 2536, 159 L. Ed. 2d 403 (2004); Ring v. Arizona, 536 U.S. 584, 589. 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002); Apprendi v. New Jersey, 530 U.S. 466, 491, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); Jones v. United States, 526 U.S. 227, 243, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999).

Succinctly stated, these cases invalidate statutorily authorized enhanced punishment premised upon factual findings made by a court independent of, and in addition to, those established by a jury verdict or plea of guilty.

In Alston v. Commonwealth, 274 Va. 759, 768, 652 S.E.2d 456, 461 (2007), the Virginia Supreme Court discussed the Apprendi line of cases, including the more recent Cunningham v. California, 127 S. Ct. 856 (2007):

> As in Booker, the Court clarified that if the sentence . . . is within the permitted statutory limit based solely upon the finding of a jury or the defendant's admissions, without any fact-finding by the trial court, then a sentence within that range raised no Sixth Amendment claim. "Other States have chosen to permit judges genuinely 'to exercise broad discretion within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal." Cunningham, 127 S. Ct. at 871 (quoting Booker, 543 U.S. at 233).

The fallacy in Myers' argument is clear. Myers entered into the plea agreement noted above in which he pleaded "no contest." A plea of "no contest" is the equivalent of a plea of guilty. Clauson v. Commonwealth, 29 Va. App. 282, 291, 511 S.E.2d 449, 453 (1999). Such a

plea "'implies a confession . . . of the truth of the charge . . . [and] agrees that the court may consider him guilty' for the purpose of imposing judgment and sentence." Commonwealth v. Jackson, 255 Va. 552, 555, 499 S.E.2d 276, 278 (1998) (alteration in original) (quoting Honaker v. Howe, 60 Va. (19 Gratt.) 50, 53 (1869)).  Though the trial court here departed from the guidelines, those guidelines are discretionary and advisory.  See Code § 19.2-298.01; Jett v. Commonwealth, 34 Va. App. 252, 256, 540 S.E.2d 511, 512-13 (2001).  The sentences imposed by the trial court were within the range of punishment authorized for violation of each crime to which Myers pleaded "no contest."  Accordingly, Apprendi and its progeny have no application to those sentences, and the trial court thus did not abuse its discretion.

Affirmed.