COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Chafin and O'Brien
Argued at Norfolk, Virginia


ALVIN DANIEL GATEWOOD

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0296-14-1                      JUDGE MARY GRACE O'BRIEN
                                                    OCTOBER 20, 2015

COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                        A. Bonwill Shockley, Judge

        (Gregory B. Turpin; The Moody Law Firm, on brief), for appellant.
        Appellant submitting of brief.

        Victoria Johnson, Assistant Attorney General (Mark R. Herring,
        Attorney General, on brief), for appellee.


        A jury convicted Alvin Daniel Gatewood ("appellant") of second-degree murder, in

violation of Code §§ 18.2-32 and 18.2-33, and felony child abuse, in violation of Code

§§ 18.2-371.1(A) and 18.2-10.  At the conclusion of the penalty phase of the trial, the jury

recommended a sentence of thirty years of incarceration in the state penitentiary for the murder

conviction and ten years of incarceration in the state penitentiary for the child abuse conviction.

Following a sentencing hearing, the trial court imposed the jury's verdict.

        Appellant asserts the following assignment of error:  "[t]he trial court erred by allowing

the Commonwealth to elicit improper victim impact testimony at the sentencing phase of the jury

trial."  Finding no error, we affirm the trial court.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Nineteen-month-old K.W. died on Sunday, November 27, 2011. K.W.'s mother, Shaniqua Jones ("Jones"), and her boyfriend, appellant, arrived at Virginia Beach Hospital with the child around 11:00 p.m. Neither appellant nor Jones showed any urgency, although the emergency room triage nurse described K.W. as "pale," "lifeless," and "not breathing." Health care providers tried for almost an hour to resuscitate K.W. Their efforts included administering CPR, intubating him, giving him oxygen, and shocking his heart. Jones and appellant told medical personnel that K.W. "had been vomiting on and off for the last twenty-four hours" and "had been lethargic all day long." The doctor noticed several bruises on K.W. that she would not expect to see on a toddler. Blood work indicated that K.W. also had internal bleeding.

Despite the doctor's efforts, K.W. was pronounced dead. Based on the injuries K.W. sustained, a police detective interviewed Jones and appellant. Initially, they both lied and said that K.W. was with his grandmother on Friday and Saturday. Later, the detective learned that K.W. had been in appellant's care while Jones was working for most of the weekend. Appellant denied injuring K.W. and denied that any accident had occurred while K.W. was in his care. He told the detective that K.W. had been vomiting all afternoon and could not stand up on his own earlier during the day.

Various family members testified at trial. The jury heard that Jones took K.W. to her aunt's house the preceding Thursday for Thanksgiving. At that time, he had no discernable injuries. K.W.'s sixteen-year-old uncle, Jacque Jones ("Jacque"), testified that he watched K.W. on Thanksgiving night and the child appeared healthy and played with the other children. He testified that he also spent Friday with K.W., who ate normally and did not seem to be in any distress. K.W.'s mother picked him up around 3:00 p.m., which was the last time Jacque saw his nephew.

Dr. Gunther, an assistant medical examiner, testified that K.W. died of blunt force trauma to his head and abdomen. She noted that K.W. had bruises on his head, face, chest, back, arms, legs, and buttocks, and she described a "serious" bite mark on his upper left arm. Dr. Gunther testified that K.W.'s belly was full of blood because his liver had ruptured. She explained that when children are beaten or squeezed very hard on the upper right side of the abdomen, they "develop a lake of blood or a pocket of blood deep inside the liver." K.W. had several lakes of blood in various stages of healing; however, one had ruptured from a fresh injury. The doctor testified that K.W. had other serious injuries as well, including injuries to his head and brain.

The jury found appellant guilty of both charges. At the sentencing hearing, K.W.'s uncle, Jacque, presented victim impact testimony. His comments included the following statements: "[i]n the days of this trial it was never my intentions [sic] to try to protect my sister. It was never in my intentions [sic] to provide any false information. All of the statements from myself were true." Defense counsel objected but the court overruled the objection, and allowed the witness to explain his statement. Jacque stated that "[a]s the trial was going on, we – myself and my family, we overheard some comments and . . . . Some statements were made that we were just saying things to protect my sister and we were lying about some things. But all of the statements that came from me and my family were true." The Commonwealth also presented victim impact evidence from K.W.'s father, grandmother, and great-grandmother.

## II. ANALYSIS

### A. Standard of Review

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). Determination of the admissibility of evidence during sentencing "lies within the sound discretion of the trial court."

Runyon v. Commonwealth, 29 Va. App. 573, 576, 513 S.E.2d 872, 874 (1999). Additionally, because Code §§ 19.2-295.3 and 19.2-299.1 address evidence to be elicited at a sentencing hearing, any issues of statutory interpretation are questions of law that this Court reviews *de novo* on appeal. Burns v. Commonwealth, 279 Va. 243, 250, 688 S.E.2d 263, 266 (2010); Farrakhan v. Commonwealth, 273 Va. 177, 180, 639 S.E.2d 227, 229 (2007).

### B. Assignment of Error: Improper Victim Impact Testimony

During the sentencing phase of the trial, Jacque described how he was affected by K.W.'s death. He also stated that he did not provide any false information during the trial and that despite overhearing comments that he and his family members had lied to protect his sister, K.W.'s mother, "[a]ll of the statements [he made at trial] were true." Appellant objected to the witness' statement, on the grounds that he was "retrying the facts of the case at this point."

Code § 19.2-295.3 mandates the admissibility of victim impact testimony:

> Whether by trial or upon a plea of guilty, upon a finding that the defendant is guilty of a felony, the court shall permit the victim, as defined in § 19.2-11.01,[1] upon motion of the attorney for the Commonwealth, to testify in the presence of the accused regarding the impact of the offense upon the victim. The court shall limit the victim's testimony to the factors set forth in clauses (i) through (vi) of subsection A of § 19.2-299.1.

Evidence admissible under Code § 19.2-299.1 includes:

    i.    identity of the victim;
    ii.    itemized economic loss suffered by the victim as a result of the offense;
    iii.    identity of the nature and extent of any physical or psychological injury suffered by the victim as a result of the offense;
    iv.    changes in the victim's personal welfare, lifestyle, or familial relationship as a result of the offense;

---

[1] Code § 19.2-11.01 defines "victim" as "a person who has suffered physical, psychological, or economic harm as a direct result of the commission of . . . a felony." Appellant does not argue that Jacque did not fit this description.

v. requests for psychological or medical services initiated by the victim or the victim's family as a result of the offense; and

vi. other information as the court may require related to the impact of the offense upon the victim.

Appellant argues that the court abused its discretion in allowing Jacque's testimony because it did not fall into any of the categories set out in Code § 19.2-299.1. We disagree.

Code § 19.2-299.1 specifically allows any victim impact testimony that addresses psychological injury resulting from the offense. The testimony at issue related to the psychological injuries caused by the crime. During closing arguments in the guilt phase of the trial, appellant's counsel argued that Jacque's sister, Shaniqua Jones, had inflicted the injuries on K.W. and that his other sister, Travina, had lied under oath in an effort to protect the child's mother. It was clear from Jacque's testimony at sentencing that the trauma of the trial was exacerbated by claims that he and his family had testified untruthfully.

Appellant incorrectly reads the Code sections allowing victim impact testimony as limiting admissible testimony. In fact, the converse is true. Code § 19.2-295.3 *requires* trial courts to admit testimony from victims concerning the effects of the crime. As we noted in Harvey v. Commonwealth, __ Va. App. __, __ S.E.2d __ (Oct. 13, 2015), "'[b]y explicitly providing that victims *shall* be allowed to testify regarding the impact of the offense on them when the defendant is found guilty of a felony, Code § 19.2-295.3 *establishes* the victim's right to testify.'" Id. at __, __ S.E.2d at __ (quoting Rock v. Commonwealth, 45 Va. App. 254, 259, 610 S.E.2d 314, 316 (2005)) (second emphasis added).

Further, this Court has held that the Code sections allowing victim impact testimony are to be applied broadly. In Rock, 45 Va. App. 254, 610 S.E.2d 314, we held that it is within the trial court's discretion to allow witnesses who do not meet the definition of "victim" to testify if their testimony is relevant, noting that "'while such persons do not have a statutorily protected right to testify, their testimony is not automatically barred.'" Id. at 262, 610 S.E.2d at 317-18

(quoting Thomas v. Commonwealth, 263 Va. 216, 235, 559 S.E.2d 652, 663 (2002)).  The Court

held that Code §§ 19.2-295.3 and 19.2-11.01(B) "*do not limit the admission of relevant*

*evidence.*"  Id. at 263, 610 S.E.2d at 318 (emphasis added).

A trial court has the discretion to admit any evidence it deems necessary and relevant to

aid the jury in determining the sentence.  See Beck v. Commonwealth, 253 Va. 373, 384-85, 484

S.E.2d 898, 905 (1997) ("the determination of the admissibility of relevant evidence [in a

sentencing hearing] is within the sound discretion of the trial court subject to the test of abuse of

that discretion"); see also Prieto v. Commonwealth, 283 Va. 149, 168, 721 S.E.2d 484, 496

(2012) ("The scope of testimony in the sentencing phase is wide, and the standard for exclusion

of relevant evidence is whether the prejudicial effect substantially outweighs its probative value.

This is a matter of discretion for the circuit court and is properly reviewed under an abuse of

discretion standard." (citation omitted)).

In this case, it was not an abuse of discretion for the trial court to determine that the

contested evidence was admissible.  There was little or no prejudicial effect from the testimony

because the jury had previously made a determination of credibility in the guilt phase of the case.

The testimony, therefore, was relevant, not because of its truth or falsity, but because it tended to

show psychological injury as allowed by statute.  It was relevant to explain how the witness and

his family were affected by testifying at trial.  Accordingly, it was within the discretion of the

trial court to allow the evidence at the sentencing hearing.

### III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.